UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL GILES,

                Plaintiff,

-against-

CITY of MT. VERNON, CAMILO ANTONINI, Individually, COUNTY OF WESTCHESTER, JEFFREY SLOTOROFF, Individually, JOSEPH KRAUS, Individually, JAMES GREER, Individually, MICHAEL HUFFMAN, Individually, DAVID SANCHEZ, Individually, STEGAN GOGGIN, Individually, and JOHN and JANE DOE 1 through 10, Individually.

                Defendants.

**OPINION AND ORDER**

20-CV-05119 (PMH)

PHILIP M. HALPERN, United States District Judge:

Michael Giles ("Plaintiff") initiated this action pursuant to 42 U.S.C. § 1983 by the filing of a Complaint on July 3, 2020. (Doc. 1, "Compl.").[1] Plaintiff alleges that his constitutional rights were violated in connection with his July 19, 2018 arrest and the ensuing criminal proceedings commenced against him. (*See* Compl.). Following the November 17, 2022 conference in this matter, the remaining defendants are Camilo Antonini ("Antonini"), Jeffrey Slotoroff ("Slotoroff"), Joseph Kraus ("Kraus"), the City of Mount Vernon, and the County of Westchester (collectively, "Defendants").[2] Plaintiff's remaining claims for relief are: (i) false arrest and false

---

[1] Citations to the Complaint correspond to the pagination generated by ECF.

[2] At the November 17, 2022 conference, Plaintiff agreed to dismiss from the action defendants Michael Huffman, David Sanchez, Stefan Goggin, James Greer, and John and Jane Doe 1 through 10, and the Court dismissed those individuals from the action with prejudice. (Doc. 74; Doc. 85, "Nov. 17 Conf. Tr." at 3:13-18).

imprisonment under § 1983; (ii) malicious prosecution under § 1983 and New York State law; (iii) violation of a right to fair trial under § 1983; and (iv) failure to intervene under § 1983.[3]

On January 5, 2023, in accordance with the briefing schedule set by the Court, Defendants served their joint motion for summary judgment on Plaintiff. (Doc. 86; Doc. 87; Doc. 88, "Carey Decl."; Doc. 89, "Def. Br."; Doc. 97). After receiving an extension of time from the Court, Plaintiff served his opposition to Defendants' motion for summary judgment on March 21, 2023. (Doc. 90; Doc. 91, "Green-Stark Decl."; Doc. 92, "Pl. Br."). Defendants' motion was fully submitted on April 21, 2023, upon the filing of its motion papers, Plaintiff's opposition, and its reply brief (Doc. 93, "Reply"). On October 26, 2023, in response to the Court's directives, the parties filed a revised joint Rule 56.1 Statement. (Doc. 95).[4]

For the reasons set forth below, Defendants' motion is DENIED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from: (1) the Complaint; (2) the parties' joint Rule 56.1 Statement; (3) the Carey Declaration in support of the Motion and the exhibits annexed thereto; and (4) the Green-Stark Declaration in opposition to the Motion and the exhibits annexed thereto. Unless otherwise indicated, the following facts are undisputed.

---

[3] At the November 17, 2022 conference, Plaintiff withdrew his Fifth (supervisory liability under § 1983), Sixth (municipal liability under § 1983), Eighth (negligent screening, hiring, and retention under New York State law), and Ninth (negligent training and supervision under New York State law) claims for relief, and the Court dismissed those claims with prejudice. (Doc. 74; Nov. 17 Conf. Tr. at 3:9-12, 13:1-6).

[4] The parties' combined their respective Rule 56.1 Statements into one document. (Doc. 95). For the sake of clarity, the Court notes that Defendants set forth their fifty paragraph "Rule 56.1 Statement" and then Plaintiff began his "Counter Statement" setting forth additional facts in numbered paragraphs beginning again at number one. The Court hereafter refers to the first section of the document as "56.1 Stmt." (Doc. 95 at 1-14) and the second section as "Pl.'s CntrStmt." (*id*. at 14-21).

    I.    <u>Plaintiff's July 19, 2018 Arrest</u>

On July 19, 2018, officers from several law enforcement agencies—including the Westchester County Police Department ("WCPD") and the Mount Vernon Police Department ("MVPD")—performed an inspection of the Volunteers of America Shelter (the "VOA Shelter"), located at 25 Operations Drive, Valhalla, New York, seeking evidence of narcotics sales occurring within the shelter. (56.1 Stmt. ¶¶ 1-2). Plaintiff was a resident of the VOA Shelter at the time. (*Id.* ¶ 3).

During the search, Antonini encountered Plaintiff taking a shower inside a shower stall in the second-floor publicly shared bathroom. (*Id.* ¶¶ 5, 7; Pl.'s CntrStmt. ¶ 2). Another individual was standing by the entrance to the bathroom at the time of the encounter. (56.1 Stmt. ¶ 8; Pl.'s CntrStmt. ¶ 2; Green-Stark Decl. Ex. 6 at 16:3-15). Antonini spoke to Plaintiff in the shower and, during the conversation, visually inspected Plaintiff's clothes and the shower's interior. (56.1 Stmt. ¶¶ 9-10). Antonini then left Plaintiff to finish his shower, which lasted somewhere between a few minutes and less than a minute. (56.1 Stmt. ¶¶ 10-12; Pl.'s CntrStmt. ¶ 4). Thereafter, Plaintiff got dressed and exited the bathroom alone. (56.1 Stmt. ¶ 12; Pl.'s CntrStmt. ¶ 5). He returned to his room where the officers were conducting a search of his belongings on account of his parole status. (Pl.'s CntrStmt. ¶¶ 7-8).

Antonini visually inspected the shower drain at some point after Plaintiff exited the bathroom, although the precise timing of that inspection is contested. (56.1 Stmt. ¶ 13). Antonini testified that inside the drain he found a folded piece of toilet paper or napkin. (*Id.* ¶ 15). The parties dispute whether Antonini would have been able to view the paper in the drain during his previous visual inspection (while Plaintiff showered). (*Id.* ¶¶ 10, 16). Antonini used a clothes hanger to remove the item from the drain and discovered that it was a clear plastic bag containing

3

17 small, clear, plastic knotted twists consisting of a chunky, off-white material, which was later identified as crack cocaine. (*Id*. ¶¶ 17-20).

Thereafter, Antonini handcuffed Plaintiff near the door to his room, taking him into custody. (*Id*. ¶ 21; Pl.'s CntrStmt. ¶ 10). While Defendants do not dispute that Plaintiff was "eventually" arrested, Plaintiff specifically contends that he was handcuffed approximately 10-15 minutes after he had finished showering and returned to his room. (56.1 Stmt. ¶ 21; Pl.'s CntrStmt. ¶ 9). Antonini then conveyed to Slotoroff that Plaintiff had been in the bathroom in possession of 17 bags of crack cocaine, and turned over custody of Plaintiff and the drugs to Slotoroff. (56.1 Stmt. ¶¶ 22-23; Pl.'s CntrStmt. ¶ 12).

## II.     Criminal Proceedings Against Plaintiff

Slotoroff, based on information provided by Antonini, drafted and swore out two felony complaints against Plaintiff in the hours after the arrest: one for criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16 (1)), a class B felony; and one for criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06 (5)), a class D felony. (56.1 Stmt. ¶¶ 24-25; Pl.'s CntrStmt. ¶ 14). Both felony complaints identified the controlled substance as a "substance believed to be crack cocaine." (Green-Stark Decl. Ex. 10). A lab report dated August 1, 2018 confirmed the presence of cocaine in the substance. (56.1 Stmt. ¶ 30).

On July 20, 2018, Plaintiff was arraigned in Mount Pleasant Justice Court and remanded to the Westchester County Jail. (56.1 Stmt. ¶ 26). A parole warrant was also sworn out against Plaintiff on that day. (*Id*. at ¶ 27). On July 23, 2018, Plaintiff was formally charged with two counts of violating his parole, with both counts related to his VOA Shelter arrest. (*Id*. at ¶ 28).  On July 25, 2018, in the Mount Pleasant Justice Court action, Plaintiff was released on his own recognizance—although he was not released from Westchester County Jail as a result of his then-

pending parole hold. (56.1 Stmt. ¶ 29). On August 2, 2018, Antonini testified at a preliminary parole revocation hearing regarding his search of the shower drain at the VOA Shelter. (Pl.'s CntrStmt. ¶ 15; Green-Stark Decl. Ex. 6). The parties dispute the veracity of Antonini's testimony at this hearing. (Pl.'s CntrStmt. ¶ 15). On September 9, 2018, Kraus swore out a superseding misdemeanor information ("SMI") against Plaintiff, alleging violation of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03), a class A misdemeanor. (56.1 Stmt. ¶ 31; Green-Stark Decl. Ex. 11). Kraus learned information about Plaintiff's arrest on the date of the arrest and did not have direct knowledge of Plaintiff's alleged possession. (56.1 Stmt. ¶ 32; Pl.'s CntrStmt. ¶ 17).

Thereafter, Plaintiff's attorney for the criminal matter in Mount Pleasant Justice Court gave ADA Littman a copy of a handwritten letter written by an individual named Andre Coverdale ("Coverdale"), and resident of the VOA Shelter on July 19, 2018, indicating that Coverdale wished to "exonerate" Plaintiff and that the drugs found in the second-floor bathroom of the VOA Shelter on July 19, 2018 were his drugs and that he put them there. (56.1 Stmt. ¶¶ 34-36; Green-Stark Decl. Ex. 9; Carey Decl. Ex. Q). Plaintiff moved to dismiss the accusatory instrument for facial insufficiency on March 20, 2019. (56.1 Stmt. ¶ 37). On April 4, 2019, after ADA Littman informed the Mount Pleasant Justice Court that he was unable to obtain a second Superseding Misdemeanor Information from Antonini, the court granted from the bench Plaintiff's motion to dismiss. (56.1 Stmt. ¶¶ 42-43; Pl.'s CntrStmt. ¶ 18).

Plaintiff appeared at a final parole revocation hearing on April 24, 2019 without counsel. There, he pled guilty to an added charge as a "legal fiction" and his parole was revoked and immediately restored. (56.1 Stmt. ¶¶ 44-45; Pl.'s CntrStmt. ¶ 21). On May 6, 2019, Plaintiff's

parole warrant was formally lifted and he was released from Westchester County Jail. (56.1 Stmt. ¶¶ 46-47).

This litigation followed.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial. . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

6

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts. . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

**ANALYSIS**

Plaintiff's four remaining claims for relief proceed under 42 U.S.C. § 1983: (i) false arrest and false imprisonment; (ii) malicious prosecution; (iii) violation of a right to fair trial; and (iv) failure to intervene.

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021).

I.  First Claim for Relief: False Arrest and False Imprisonment

Plaintiff asserts in his first claim for relief that Antonini and Slotoroff are liable for false arrest.[6] (Pl. Br. at 13-22). To prove a false arrest claim, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

a. Probable Cause

"Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

---

[6] Plaintiff, by way of opposition, voluntarily discontinued his false arrest claim asserted against Kraus. (Pl. Br. at 20). Accordingly, the First Claim for Relief is hereby dismissed with prejudice as to Kraus.

crime." *Wierzbic v. Howard*, 836 Fed. App'x 31, 34-35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant*, 101 F.3d at 852.

i. Antonini

Defendants argue that probable cause, or at least arguable probable cause, existed for Antonini to arrest Plaintiff for criminal possession of a controlled substance based on a theory of constructive possession of the narcotics found in the shower drain. (Def. Br. at 12). "In analyzing § 1983 claims for unconstitutional false arrest," courts "look[] to the law of the state in which the arrest occurred." *Jaegly*, 439 F.3d at 151. "Under New York law, a person constructively possesses tangible property when he or she exercises dominion and control over the property with a sufficient level of control over the area in which the contraband is found." *Content v. Curran*, No. 20-CV-05444, 2022 WL 2905158, at *5 (S.D.N.Y. July 22, 2022) (quoting *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *8 (E.D.N.Y. Sept. 25, 2020)). "Constructive possession may be shown by direct or circumstantial evidence, and possession of the item need not be exclusive." *Id.* (quoting *United States v. Albarran*, 943 F.3d 106, 118 (2d Cir. 2019)). "Mere presence [at the location of the contraband] is insufficient," but "presence under a particular set of circumstances

9

from which a reasonable jury could conclude that the defendant constructively possessed contraband" is sufficient to establish constructive possession. *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021) (quoting United *States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016)). "For example, documents pertaining to a defendant found in the same location as narcotics, possession of a key to the location where drugs are found, or whether the drugs are in plain view, are factors relevant to constructive possession." *Id*. (citing *Facen*, 812 F.3d at 287).

Here, the undisputed evidence shows that drugs were found in the same bathroom that Plaintiff had previously showered in. Plaintiff contends, based on the fact that the bathroom is publicly accessible and at least one other resident was present near the bathroom that day, that anyone could have accessed the bathroom to conceal the drugs before he entered the bathroom or after he finished showering. (Pl. Br. at 15). Defendants rely primarily on the "immediate[]" discovery of the drugs after Plaintiff left the bathroom to support that Plaintiff had constructive possession. (Def. Br. at 14). However, the timing of Antonini's discovery of the drugs—namely, whether there was a gap in time (and the length of any such gap) between Plaintiff exiting the shower and Antonini searching the drain—is a disputed issue. Defendants assert, based on Antonini's testimony at the preliminary parole revocation hearing, that the search occurred "immediately" after Plaintiff left the bathroom. (Def. Br. at 10-11, 13-14, 17; 56.1 Stmt. ¶ 13; Green-Stark Decl. Ex. 1 at 13:16-18 ("Not even like, 30 to 45 seconds later, the shower stopped. I immediately responded back to the same shower stall . . . .")). Plaintiff argues that the search could not have been "immediate" given that he testified that Antonini was not present in the bathroom

at the time he exited the shower. (Rule 56.1 Statement ¶ 13; Pl. Br. at 17-18; Green-Stark Decl. Ex. 4 "Giles Dep. Tr." at 9:9-10:9).[7]

Viewing the evidence in the light most favorable to Plaintiff and considering the totality of the circumstances, the Court cannot, on these facts, conclude as a matter of law that Antonini had probable cause to arrest Plaintiff for constructive possession of the drugs in the publicly shared bathroom. *See i.e. Haskins v. City of New York*, No. 15-CV-02016, 2017 WL 3669612, at *8-11 (E.D.N.Y. Aug. 24, 2017) (denying summary judgment as to false arrest claim where "genuine disputes as to issues of material fact exist as to whether [Defendant] had probable cause to arrest Plaintiff for constructive possession of the recovered narcotics.").

    ii.  <u>Slotoroff</u>

Defendants further argue that—pursuant to the collective knowledge doctrine and irrespective of the Court's determination as to Antonini—Slotoroff had probable cause to arrest Plaintiff. (Def. Br. at 18-19). The collective knowledge doctrine (or fellow officer rule) "permits courts to assess probable cause to arrest by looking at the collective knowledge of the police force, and does not require that the arresting officer know the precise facts justifying police action." *Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 569 (S.D.N.Y. 2015) (citing *United States v. Valez,* 796 F.2d 24, 28 (2d Cir. 1986)). "If one officer in a police department has knowledge of facts that establish probable cause to arrest a suspect, the suspect suffers no constitutional deprivation if he is arrested by a different officer who lacks such knowledge." *Crawford v. City of New York*, 477 F. App'x 777, 779 (2d Cir. 2012). Plaintiff argues that "since [he] has called

---

[7] Defendants argue in reply that there is "no evidence that Antonini did not inspect the drain right after plaintiff exited the shower." (Reply at 8). But Plaintiff's testimony that Antonini was not present in the bathroom at the time he exited the shower is at least some evidence that Antonini did not conduct an *immediate* inspection of the drain.

probable cause into question, the fellow officer rule does not insulate Slotoroff from liability for his role in plaintiff's arrest." (Pl. Br. at 20-21). The Court agrees.

There is no dispute that Slotoroff's arrest of Plaintiff was predicated on information provided by Antonini, but the parties dispute exactly what details were conveyed to Slotoroff and whether Slotoroff had reason to doubt Antonini's truthfulness. (56.1 Stmt. ¶¶ 23-25). *Jackson v. City of New York*, 939 F. Supp. 2d 235, 256 (E.D.N.Y. 2013) ("The 'fellow officer' rule is typically invoked in cases where the record is clear as to what the officer seeking backup reported."). Because the Court has already determined that an issue of material fact exists as to whether Antonini had probable cause to arrest Plaintiff, the Court likewise declines to make a determination on this record as to whether Slotoroff had probable cause to arrest Plaintiff. *See i.e. Bacote v. Riverbay Corp.*, No. 16-CV-01599, 2017 WL 11567934, at *10 (S.D.N.Y. Nov. 8, 2017) ("On the present record, the disputed issues of fact underlying the determination of probable cause precludes the entry of summary judgment in favor of any Defendants on the false arrest claim.")).

    b. Qualified Immunity

Defendants further argue that Antonini and Slotoroff are entitled to qualified immunity on Plaintiff's false arrest claim. (Def. Br. at 14-20). "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins*, 478 F.3d at 87. An officer's decision to arrest "is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id*. Moreover, "where probable cause is lacking, an officer who participates in the arrest is nonetheless immune from suit in his or her

individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause." *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 577 (S.D.N.Y. 2002).

Here, the right to be free from arrest without probable cause was clearly established at the time of Plaintiff's arrest. *Jenkins*, 478 F.3d at 87 (2d Cir. 2007). Additionally, the law was clearly established that constructive possession could not be established by mere presence at the location where contraband is found. *Willis*, 14 F.4th at 181. However, as discussed *supra*, there is an issue of material fact as to whether Antonini had probable cause (or arguable probable cause) to arrest Plaintiff on a theory of constructive possession. Additionally, with respect to Slotoroff whose arrest of Plaintiff was predicated on information provided by Antonini, the record is not clear regarding exactly what information was conveyed to Slotoroff and when. (56.1 Stmt. ¶¶ 21-25). The Court cannot determine on this record whether Antonini's probable cause determination or Slotoroff's reliance on Antonini's information was objectively reasonable. *See Bacote*, 2017 WL 11567934 at *12; *see also Nazario v. Thibeault*, No. 22-1657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (open material issues of fact preclude finding of qualified immunity); *Zwick v. Town of Cheektowaga*, No. 17-CV-00727, 2021 WL 4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021) ("[G]iven the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense.").

Accordingly, Defendants' motion for summary judgment as to the first claim for relief and the affirmative defense of qualified immunity is DENIED as to Antonini and Slotoroff.

## II.     Second and Seventh Claims for Relief: Malicious Prosecution

Plaintiff's second and seventh claims for relief for malicious prosecution under federal and state law are asserted against all Defendants. "In order to prevail on a § 1983 claim against a state

actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Under New York and federal law, a plaintiff must allege: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Franco v. Gunsalus*, No. 22-339, 2023 WL 3590102, at *4 (2d Cir. May 23, 2023) (quoting *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021)). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1335 (2022). However, when pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate [her] Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

Defendants challenge the first (initiation or continuation of a criminal proceeding), third (lack of probable cause), and fourth (actual malice) elements of Plaintiff's malicious prosecution claims. (Def. Br. at 22-29). The Court herein analyzes only the contested elements.

    a. <u>Commencement or Continuation of a Criminal Proceeding</u>

Defendants challenge this first element only with respect to Plaintiff's claim against Kraus. (Def. Br. at 26-27). Plaintiff's malicious prosecution claim against Kraus is based on allegations that he swore out an accusatory instrument and put false information into the record. (Pl. Br. at 25-26). "In general, courts presume the prosecutor exercises independent judgment in deciding

14

whether to initiate or continue a criminal proceeding." *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *11 (S.D.N.Y. Dec. 18, 2020). "Where the defendant in a malicious prosecution action is a police officer, courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457–58 (S.D.N.Y. 2009).

Here, Kraus's swearing to the SMI is sufficient to meet the first element. *See Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 532 (S.D.N.Y. 2015). Moreover, the record reflects that the SMI contained misrepresentations. The substance referred to in the SMI is "a white powdery substance believed to be cocaine." (Carey Decl. Ex. N at 2). But the substance allegedly possessed by Plaintiff was crack cocaine, not powdered cocaine. (56.1 Stmt. at ¶ 32). The SMI also indicates that Kraus had "direct knowledge" of Plaintiff's alleged possession of the drugs, when it is undisputed that Kraus did not have direct knowledge at the time. (Pl.'s CntrStmt. ¶ 17). Accordingly, viewing the facts in favor of Plaintiff, summary judgment is inappropriate as to Kraus on this ground.

      b. <u>Lack of Probable Cause</u>

Defendants argue with respect to the third element that Plaintiff's malicious prosecution claim fails because Antonini, Slotoroff, and Kraus had probable cause (or at least arguable probable cause) to arrest and prosecute Plaintiff. (Def. Br. at 23-26). "Like a false arrest claim, the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020 WL 2732068, at *5 (S.D.N.Y. May 26, 2020) (internal quotation removed). However, "[o]nce probable cause to arrest has been

established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, the groundless nature of the charges is made apparent by the discovery of some intervening fact." *Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013) (internal quotation removed). With respect to Antonini, as discussed *supra*, there exists an issue of material fact as to whether he had probable cause to arrest Plaintiff. Both Slotoroff and Kraus relied on Antonini's information in drafting their respective accusatory instruments. (56.1 Stmt. ¶¶ 32, 49-50; Pl.'s CntrStmt. ¶¶ 12-17). While Slotoroff and Kraus may ultimately be found to have probable cause based on the collective knowledge doctrine, the Court cannot conclude on this record that probable cause was imputed to Slotoroff or Kraus. *See Bacote*, 2017 WL 11567934, at *10 ("[p]robable cause cannot be imputed from officers who do not have probable cause to begin with.").

    c. Lack of Actual Malice

Lastly, Defendants argue that Antonini lacked actual malice. (Def. Br. at 24-25). Based on the Court's earlier finding that there is an issue of material fact as to Antonini's determination of probable cause, the element of malice is also an open issue of material fact. *See Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well.").

    d. Qualified Immunity

Defendants reiterate their arguments as to qualified immunity with respect to Plaintiff's malicious prosecution claims. As discussed *supra*, given that disputed issues of fact remain as to probable cause, the Court cannot determine qualified immunity. *See Walker v. Carrozzo*, No. 21-CV-02975, 2023 WL 2664610, at *18 (S.D.N.Y. Mar. 28, 2023) ("the material factual disputes underpinning the probable cause determination . . . make a granting of qualified immunity on the false arrest and malicious prosecution claims inappropriate here as such facts are material to a

determination of reasonableness."); *see also Fincher v. Cnty. of Westchester*, 979 F. Supp. 989, 1001 (S.D.N.Y. 1997) (recognizing that the existence of factual disputes regarding whether defendants falsified a felony complaint and supporting deposition precluded a finding of qualified immunity).

For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claims and the affirmative defense of qualified immunity is DENIED as to all Defendants.[8]

### III. Third Claim for Relief: Violation of Right to Fair Trial

Plaintiff, in his opposition, argues the third claim for relief for violation of a right to fair trial only applies to Antonini and Kraus. The Due Process Clause guarantees a criminal defendant's right to a fair trial." *Frost*, 980 F.3d at 244. "This right is violated '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). "[U]nlike a malicious prosecution claim, 'a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision

---

[8] Defendant argues that Plaintiff's malicious prosecution claim asserted against the City of Mount Vernon and the County of Westchester under the state law theory of liability *respondeat superior* fails as a matter of law. (Def. Br. at 25, 29). "[M]unicipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*." *Mesa v. City of N.Y.*, 09-CV-10464, 2013 WL 31002, at *34 (S.D.N.Y. Jan. 3, 2013). However, "[i]f summary judgment is inappropriate on a state law tort, then it is inappropriate on the related *respondeat superior* claim." *See Sankar v. City of New York*, 867 F. Supp. 2d 297, 313 (E.D.N.Y. 2012). Summary judgment is therefore inappropriate as to the municipal defendants.

of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff.'" *Frost*, 980 F.3d at 244 (quoting *Garnett*, 838 F.3d at 277-78)).

With respect to Antonini, Plaintiff's violation of a right to fair trial claim is based on arguments that he: (i) provided false information to Slotoroff—namely, that Plaintiff had been found in physical possession of narcotics; and (ii) provided false testimony at Plaintiff's parole hearing concerning the sequence of events. (Pl. Br. at 28-29). Defendants contend that Plaintiff's claim is "purely speculative." (Def. Br. at 30-31). Here, it is undisputed that Antonini conveyed to Slotoroff that Plaintiff had been in the bathroom in possession of crack cocaine. (Pl.'s CntrStmt. ¶ 12). Slotoroff then used that information in drafting his case report and felony complaints. (Green-Stark Decl. Exs. 17-18; Pl.'s CntrStmt. ¶ 12). The parties dispute whether Antonini's representations to Slotoroff falsely represented physical, as opposed to constructive, possession. (Pl.'s CntrStmt. ¶ 14). Therefore, an issue of fact exists as to whether Antonini's representations constitute false information. Additionally, with respect to Antonini's statements at the parole hearing, the Court has already found that an issue of fact exists as to the timing of Antonini's discovery of the drugs, which is pertinent to ascertaining the truth or falsity of Antonini's statements.

With respect to Kraus, Plaintiff's claim for violation of a right to fair trial is based on his signing of the SMI "knowing it contained material falsities." (Pl. Br. at 29). The Court has already concluded that two of the representations contained in the SMI were inaccurate. Accordingly, construing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court cannot conclude as a matter of law that Kraus did not knowingly supply false information to the prosecutor.

Accordingly, Defendants' motion for summary judgment as to the third claim for relief is DENIED as to Antonini and Krause.

IV.   Fourth Claim for Relief: Failure to Intervene

Plaintiff asserts his fourth claim for relief for failure to intervene against Antonini, Slotoroff, and Kraus. (Pl. Br. at 30-31). "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). While Defendants cannot be held liable for both the constitutional violation and failure to intervene in that violation, Plaintiff may assert his failure to intervene claims in the alternative. *See Marshall v. Port Auth. of New York & New Jersey*, No. 19-CV-02168, 2020 WL 5633155, at *8 (S.D.N.Y. Sept. 21, 2020) ("Although [Defendants] cannot be held directly liable for these violations and for failure to intervene and stop those alleged violations, [Plaintiffs] may proceed with these claims in the alternative."). Given that Plaintiff's claims for false arrest, malicious prosecution, and violation of right to fair trial are proceeding to trial, a reasonable jury may, after viewing the evidence at trial, find that Antonini, Slotoroff, or Kraus, knew of but failed to intervene in violations of Plaintiff's constitutional rights. Therefore, Defendant's motion for summary judgment as to the fourth claim for relief is DENIED as to Antonini, Slotoroff, and Kraus.

V.   Damage Limitation

In light of the issues of material fact that exist and the claims proceeding to trial, the Court declines to impose any limitation on Plaintiff's damages at this stage.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. The following claims will proceed to trial: (i) false arrest and false imprisonment asserted against

Antonini and Slotoroff; (ii) malicious prosecution asserted against Antonini, Slotoroff, Kraus, City of Mount Vernon, and County of Westchester; (iii) violation of a right to fair trial asserted against Antonini and Kraus; and (iv) failure to intervene asserted against Antonini, Slotoroff, Kraus.

The parties are directed to meet and confer and comply with Rules 6(A) and 6(B) of the Court's Individual Practices (rev. June 23, 2023) by filing the documents required therein, which include a joint pretrial order, proposed joint *voir dire* questions, joint requests to charge, joint verdict form, and any motions *in limine*, on or before February 9, 2024. Opposition to any motions *in limine* is due February 23, 2024.

A pretrial conference has been scheduled for April 4, 2024 at 12:00 p.m. to be held in Courtroom 520 of the White Plains courthouse.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 86 and Doc. 97.

**SO ORDERED:**

Dated:   White Plains, New York
            January 10, 2024

_____
PHILIP M. HALPERN
United States District Judge